U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

SEP - 5 2007

ROBERT H. SHEMWELL, CLERK
BY _____
              DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| SENTRY INSURANCE | : | DOCKET NO. 06-570 |
| VS. | : | JUDGE TRIMBLE |
| SOUTHWERSTERN LOUISIANA HOSPITAL ASSOCIATION D/B/A LAKE CHARLES MEMORIAL HOSPITAL AND R. DALE BERNAUER | : | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Before the Court is "Sentry Insurance A Mutual Company's Motion for Summary Judgment" (doc. #48) and "Sentry Insurance A. Mutual Company's Amended Motion for Summary Judgment" (doc. #62). By ordered dated August 3, 2007, the court granted Sentry's motion to Amend/Correct Motion for Summary Judgement.[1] The amended motion for summary judgment requests that the Court issue an Order declaring that (1) Sentry Insurance A Mutual Company ("Sentry") is not a "group purchaser" as that term is used in Louisiana Revised Statute § 40:2201 *et seq.* (the "PPO Act"), and thus is not subject to liability under the PPO Act, (2) the PPO Act does not apply to workers' compensation, and (3) the Provider Agreements signed by Defendants, Dr. Dale Bernauer ("Bernauer") and Lake Charles Memorial Hospital ("LCMH") entered into with First Health Group Corp. are valid and enforceable and do not violate the Louisiana Workers' Compensation Act.

## FACTUAL STATEMENT

The following facts are not in dispute. Sentry is a licensed insurance company that issues

---

[1] See doc. #61.

workers' compensation policies in Louisiana.  Sentry has never established or operated a preferred provider organization ("PPO") network in Louisiana and has never contracted with medical providers or hospitals in order to establish or operate a PPO in Louisiana.  Dr. Bernauer and LCMH entered into Provider Agreements with First Health whereby the providers agreed to accept the reimbursement amount as payment in full for medical services, including medical services performed in connection with workers' compensation claims.  Sentry entered into an agreement ("PPO Contract") with First Health Group Health Corp. ("First Health") whereby First Health agreed to make available to Sentry various hospitals and medical providers.

Since joining with First Health, Dr. Bernauer and LCMH have treated numerous employees of Sentry's insured/employers in connection with workers' compensation claims.  Although Sentry has paid Dr. Bernauer and LCMH the negotiated rates in accordance with the Provider Agreements and the PPO Contract, the medical providers have sought additional monies for medical services on workers' compensation claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[2] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[3]  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the

---

[2]  Fed. R.Civ. P. 56(c).

[3]  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

2

non-moving party.[4] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[5] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[6] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[7] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[8] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[9]

## LAW AND ANALYSIS

*Are the Provider Agreements valid and enforceable?*

Sentry maintains that it is entitled to summary judgment in its favor on the grounds that the Provider Agreements between First Health and Dr. Bernauer and LCMH are valid and enforceable as a matter of law.  Defendants maintain that Sentry is not entitled to summary judgment because "[A]ll of the judges, including six of the twelve judges of the Louisiana Third Circuit Court of

---

[4] *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999).

[5] *Vera v. Tue,* 73 F.3d 604, 607 (5th Cir. 1996).

[6]  *Anderson,* 477 U.S.  at 249.

[7]  *Celotex Corp. v.  Catrett,* 477 U.S. 317, 324 (1986).

[8]  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

[9]  *Anderson,* 477 U.S. at 249-50.

3

Appeal have concluded that a PPO's contracting (below the Louisiana Fee Schedule) in general, <u>does</u> run afoul of LSA-R.S. 23:1033"[10] citing *Beutler England Clinic v. Mermentau Rice, Inc.*[11] Defendants then contend that this Court is "bound to make an *Erie guess* and attempt to rule as the highest Louisiana State Court would rule.[12] In *CCN v. Managed Care, Inc. v. Dr. Fayez Shamieh, AMC, et al,*[13] the Court considered the decision in *Mermentau* and concluded that because the issue before the appellate court challenged the jurisdiction of the state court rather than challenging the validity of the Provider Agreements, and further because the relevant issue was not briefed nor properly analyzed by the appellate court, Judge Peter's concurring opinion was neither helpful nor persuasive.

In the *Liberty Mutual*[14] decision this Court made the following analysis and conclusion:

> Gunderson and LCMH maintain that Louisiana's Workers' Compensation Laws expressly prohibit the use of any contract which "operates to relieve an employer, in whole or in part, of any liability" created by the Louisiana Workers' Compensation Act.[15] Hence, they argue that the discount provision in the Provider Agreements runs afoul of the direct prohibition of such contracts in Louisiana Revised Statute 23:1033, and cannot be used by a Louisiana workers' compensation carrier when paying a workers' compensation bill in the State of Louisiana. We disagree.
>
> Louisiana Revised Statute 23:1033 prohibits a contract that operates "to relieve the **employer**, in whole or in part, from any liability created by this Chapter .... "

---

[10] Defendants' opposition memorandum, p. 12.

[11] 931 So.2d 553 (La.App. 3d Cir. 2006).

[12] Defendants' opposition memorandum, p. 12.

[13] Docket no. 06-519, Memorandum Ruling dated 7/20/2007, doc. #85.

[14] 2006 WL 367700 (W.D. La. 2006).

[15] La. R.S. 23:1033.

4

(Emphasis added). In *Jones v. General Motors Corp.,*[16] the Louisiana Supreme Court recognized that an agreement between employer and employee may waive or alter "statutorily established rights" so long as it is "clear and unambiguous." The Court also acknowledged that the Louisiana Workers' Compensation Act " is designed to benefit the injured worker" and read Louisiana Revised Statute 23:1033 to impose a "limitation on a contract which relieves the ***employer*** of *compensation* liability."[17] The Court does not find that the Provider Agreements have relieved the employer of its compensation liability, and we will not expand the literal interpretation of this statute.

In further support of this finding is the clear language of Louisiana Revised Statute 23:1034.2(E) which provides the following:

> Nothing in this Section shall prevent a health care provider from charging a fee for such care, services, treatment, drugs, or supplies that is *less than* the reimbursement established by the reimbursement schedule. (Emphasis added)

Furthermore, Louisiana Revised Statute 23:1203(B) provides further support for discounted or lower rates of reimbursement:

> The obligation of the employer to furnish such care, . . . is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, . . . as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 *or the actual charge made for the service, whichever is less.* (emphasis added)

In summary, the Court concludes that there are no prohibitions in the Louisiana Workers' Compensation laws that prevent a provider from agreeing to charge and receive discounted rates for the services they provide to occupationally ill or injured workers.

For the reasons set forth here and in the *Liberty Mutual* decision, the Court will enter summary judgment in Sentry's favor on the issue of whether the Provider Agreements are valid and enforceable under the Louisiana Workers' Compensation Act.

*Group Purchaser*

Defendants contend that Sentry violated the PPO Act by failing to provide notice to the

---

[16]   2003-1766 (La. 4/30/04), 871 So.2d 1109.

[17]   *Id.*

5

providers that their treatment of workers' compensation claimants would be discounted pursuant to the Provider Agreements with First Health. Sentry maintains that it is not a group purchaser, thus the PPO Act notice provisions do not apply to workers' compensation claims. Louisiana Revised Statute 40:2202(3) defines a group purchaser as follows:

> "Group purchaser" shall mean an organization or entity which contracts with providers for the purpose of establishing a preferred provider organization. "Group purchaser" may include:
> (a) Entities which contract for the benefit of their insured, employees, or members such as insurers, self-funded organization, Taft-Harley trust or employers who establish or participate in self funded trusts or programs.
> (b) Entities which serve as brokers for the formation of such contracts, including health care financier, third party administrators, providers or other intermediaries.

In an attempt to create a genuine issue of material fact, Defendants make the following statement: "Sentry is part of a silent PPO."[18] Defendants attach the affidavits of Dr. Heller,[19] John Dore,[20] and Charles Whitson.[21] The affidavits attempt to explain a "silent PPO" such as the Affidavit of Mr. Dore which states that "[t]he Third Party Administrators will act as brokers and intermediaries and access these network contracts with the providers in order to contractually take advantage of the providers alternate rates and then pass this price benefit along to their payor clients, thus *forming a Preferred Provider Organization.*"[22] Sentry has not established, owned or operated a PPO network in Louisiana. Sentry is an insurer/payor and has no direct contract with Dr. Bernauer

---

[18] Defendants' statement of material fact ¶ 6. (doc. #59)

[19] Defendants' exhibit L.

[20] Defendants' exhibit M.

[21] Defendants' exhibit A.

[22] Defendants' exhibit M., p. 1.

6

and LCMH.  Thus, the Court finds that Defendants have failed in this respect to create a genuine issue of material fact for trial.

Next, Defendants cite *Cigna v. Ieyoub*,[23] to support its position that Sentry is a group purchaser.  In the *Cigna* case, the Court was asked to decide whether ERISA pre-empted the PPO Act.  In *dicta*, the court referred to two parties, CIGNA and CGLIC as group purchasers.  CIGNA was a licensed health maintenance organization (HMO) that provided prepaid health care coverage to enrolled subscribers–including the sponsors of ERISA-qualified employee benefit plans– by contracting with selected physicians, hospital, and other health care suppliers (collectively, providers).  The providers agreed to comply with CIGNA's quality control requirements and to offer health care services to CIGNA's subscribers at a discounted rate.

CGLIC, a licensed health insurer, marketed CIGNA's provider network .  CGLIC contracted with CIGNA for the right to use the provider network in conjunction with the insured and self-funded health benefit plans that CGLIC offered to and administered for its clients.  CGLIC's clients also includes sponsors of ERISA-qualified employee welfare benefit plans.

Sentry is not in the same position as CGLIC.  It does not contract with providers for the purpose of establishing a PPO, it does not own, operate or market a PPO network.  The definition clearly and unambiguously states that a group purchaser is an "organization or entity *which contracts with providers for the purpose of establishing a preferred provider organization.*"[24]  Sentry has not contracted with a provider for the purpose of establishing a PPO network; it contracted with First Health for the purpose of accessing the First Health PPO network and offering workers'

---

[23]  82 F.3d 642 (5th Cir. 1196).

[24]  La.R.S. § 2202(3).

compensation insurance policies to its customers.

In *Liberty Mutual Insurance Co. v. Gunderson*,[25] this Court reasoned and held the following regarding the purpose of the notice requirements and the intent of the legislature:

> The purpose of the PPO statutes is to control the rising costs of providing quality health care benefits.[26] Louisiana courts have long held that a "statute should be construed so as to produce a reasonable result."[27] "The function of the courts is to interpret the laws so as to give them the meaning which the lawmakers obviously intended them to have and not to construe them so as to give them absurd or ridiculous meanings."[28]
>
> A "group purchaser" is defined as "an organization or entity which contracts with providers for the purpose of establishing a preferred provider organization."[29] First Health is a group purchaser. The PPO Contract between Liberty Mutual and First Health is an "agreement of [a] group purchaser [ *i.e.* First Health]. Accordingly, the language of the statute is clear that the notice requirements do not apply to group purchasers when providing health benefits through their own network or *to such agreements of group purchaser.* This is the logical and reasonable interpretation of the statute and is in line with the Legislature's intent to contain escalating health care costs. Furthermore, and more significantly, this was the expectation of the parties when they entered into the PPO Contract and Provider Agreements.
>
> We are further persuaded by First Health's arguments concerning the intent of the legislature that the notice provision at issue here applies to a "silent PPO" where there is no direct contract between the provider and the PPO. For example, when a PPO (such as First Health) makes an assignment to another PPO network. It is in those instances that the notice requirement provisions of Louisiana Revised Statute § 40 2203.1 become applicable because there is no direct contract between the provider and the PPO assignee.

First Health has a direct contract (the Provider Agreement) with Dr. Bernauer and LCMH

---

[25]  No. 04-2405, 2006 WL 367700 (W.D. La. Feb 15, 2000).

[26]  La. R.S. 40:2201.

[27]  *Bradford v. Louisiana Public Service Comm'n.*, 189 La. 327, 338, 179 So. 442 (1938); *Louisiana Municipal Ass'n. v. State*, 893 So.2d 809, 864 (La.2005).

[28]  *Webb v. Parish Council of Parish of East Baton Rouge*, 217 La. 926, 47 So.2d 718, 720 (1950); *Savoie v. Rubin*, 2001-3275 (La. 6/21/02), 820 So.2d 486, 488.

[29]  La. R.S. 40:2202(3).

in which the doctors agreed to provide medical services at discounted rate to "Payors."[30] Sentry

entered into a contract (the Payor Contract) with First Health wherein First Health agreed to make

available various hospitals and medical providers.[31] Louisiana Revised Statute 40:2203.1 proides

the following regarding PPO agreements:

> A.    Except as otherwise provided in this Subsection, the requirements of this
> Section shall apply to all preferred provider organization agreements that are
> applicable to medical services rendered in this state and to group purchasers as
> defined in this Part. *The provisions of this Section shall not apply to a group
> purchaser when providing health benefits through its own network or direct
> provider agreements or to such agreements of a group purchaser.*

Defendants make the following "Statement of Undisputed Material Fact":

> None of the defendants received a benefit card or prior notice from Sentry or its
> network, First Health, showing the patients membership in the PPO prior to services
> being rendered, as required by Louisiana state law and/or the Sentry contract.
> Affidavits of Charles Whitson and Dr. Bernauer (Exhibits A and B).[32]

The Provider Agreements expressly state that "First Health will supply Provider with [sic]

list of all Payors that have entered into Agreements with First Health to utilize Provider's services."[33]

Thus, pursuant to the Provider Agreement, First Health was obligated to notify the medical providers

of its payors that Sentry would be utilizing First Health's PPO network. Whether or not First Health,

---

[30] Sentry's exhibit B. Payor is defined as "an employer, trust fund, insurance carrier,
health care service plan, trust, nonprofit hospital service plan, a governmental unit, any other
entity which has an obligation to provide medical services or benefits for such services to
Participating Patients, or any other entity which has contracted with First Health to use First
Health's PPO Plan." § 2.7

[31] Sentry's exhibit A.

[32] Defendants' Statement of Undisputed Material Facts in Support of its Opposition to
Motion for Summary Judgment, p. 2 ¶ 2.

[33] Sentry's exhibit B 1, ¶ 1.5.

not a party to this suit, failed to comply with its contractual agreements to provide a list of payors to Dr. Bernauer and LCMH, is not an issue before the Court.

For the reasons set forth above, the Court concludes that Sentry is not a group purchaser.

*Does the PPO Act apply to workers' compensation claims?*

Sentry maintains that the Louisiana PPO Act does not apply to PPO's that involve workers' compensation claims, but only to group health plans. Defendants argue that Sentry's position lacks merit citing Louisiana Revised Statute 40:2203.1(A) in pertinent part as follows:

### Prohibition of certain practices by preferred provider organizations

A. Except as otherwise provided in this Subsection, the requirements of this Section shall apply to *all preferred provider organization agreements that are applicable to medical services* rendered in this state and to group purchasers as defined in this Part. . . . (emphasis added)

Defendants argue that if the Legislature had intended for the AWPA not apply to workers' compensation claims that had utilized a PPO network, it could have limited the scope of the notice requirements of Louisiana Revised Statute 40:2203.1 to apply to group health PPO's only. Defendants also note that PPO's are used in a variety of medical bill payment situations, including not only group health medical payments and workers' compensation medical payments, but also Jones Act, maritime maintenance and cure medical payments, Longshore Harbor Worker's medical payments, as well as individual health insurance. Accordingly, the Court finds that Sentry's argument that the PPO Act does not apply to workers' compensation claims lacks merit.

### CONCLUSION

For the reasons set forth above, the amended motion for summary judgment will be **GRANTED** in part and **DENIED** in part; the motion will be granted to the extent that the Court

finds that the Provider Agreements Dr. Bernauer and Lake Charles Memorial Hospital entered into

with First Health Group Corp. are valid and enforceable and do not violate the Louisiana Workers'

Compensation Act, and Sentry Insurance, A Mutual Company is not a group purchaser; the motion

will be denied to the extent that the Court finds that the Louisiana PPO Act is applicable to workers'

compensation claims that utilize a PPO network.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 5th day of

September, 2007.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

11